IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SUZANNE BERNADETTE SULLIVAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:13-CV-00846-JO |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner of ) | |
| Social Security, ) | OPINION AND ORDER |
| ) | |
| Defendant. ) | |

JONES, J.,

Plaintiff Suzanne Bernadette Sullivan appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I REVERSE and REMAND for further administrative proceedings.

## PRIOR PROCEEDINGS

Sullivan alleged she has been disabled since January 1, 2003 due to severe degenerative disc disease, lumbar syndrome, and morbid obesity. Admin. R. 15. She alleged intense pain that

1 - OPINION AND ORDER

initially surfaced in January 2003 and progressed significantly from December 2005 until December 2006. Her medical history consists of four back fusions, collapsing discs, and sciatic pain radiating to her legs and feet. Admin. R. 15. She said that by December 2005 she became essentially housebound. She alleged these impairments prevented her from performing any work.

The Administrative Law Judge (ALJ) applied the five-step test outlined in 20 C.F.R. § 404.1520 to determine whether Sullivan was disabled for purposes of the Social Security Act. The ALJ correctly determined that Sullivan satisfied the insured status requirements for a claim under Title II through December 31, 2006. Admin. R. 12. She must establish that she was disabled on or before that date to prevail on her claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ found that her morbid obesity, lumbar syndrome, status post discectomy and fusion limited her ability to work. The ALJ further held that Sullivan's impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). Admin R. 14. He determined that Sullivan retained the residual functional capacity ("RFC") to perform the full range of sedentary work. Admin. R. 15. Lastly, the ALJ found she could perform her past relevant work as a circulation manager for a newspaper because this position did not require work that her RFC precluded. Admin. R. 16. The ALJ found Sullivan not disabled within the meaning of the Social Security Act. Admin. R. 17.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if he applied the proper legal standards and if substantial evidence in the record as a whole supports the findings of fact. 42

2 - OPINION AND ORDER

U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the court will uphold the Commissioner's factual findings if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Sullivan contends the ALJ erroneously evaluated her subjective statements, the findings and opinions of medical sources, and the statements of a lay witness. She argues the ALJ improperly concluded that she did not meet the criteria for any listed impairment at step three and failed to assess accurately her RFC.

### II. Medical Evidence

Sullivan contends the ALJ improperly ignored relevant medical evidence. An ALJ can properly discount the opinion of a treating physician with a clear and convincing explanation supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Sullivan argues the ALJ committed reversible error by rejecting the opinions of Dr. Thomas P. Henry and his nurse practitioner, Victoria LaPorte, who said Sullivan could not sit on a hard or padded bench for more than an hour at a time. Admin. R. 189. Next, Sullivan argues the ALJ erred in rejecting the results of Dr. Michael Neuman's 2009 bone scan showing evidence of severe degenerative disc disease, especially at L3-4, with subchondral sclerosis. Admin. R. 333. She additionally argues that the ALJ erred in rejecting other clinical findings

3 - OPINION AND ORDER

that support her lumbar impairment including: positive straight-leg tests (Admin. R. 181, 184, 189, 327), abnormal gait (walking with two canes) (Admin. R. 181-184, 189, 302), reduced range of motion (Admin. R. 191, 182, 184, 189, 302, 319, 327), muscle spasms (Admin. R. 181, 182, 183, 184, 189, 327), tenderness to palpation (Admin. R. 183, 184, 319, 327), lower extremity weakness (Admin. R. 181), and blunted lower extremity reflexes (Admin. R. 327).

The Commissioner argues the ALJ must provide an explanation only when he rejects significant and probative evidence; the rejection of other evidence does not require an explanation. The Commissioner contends none of the evidence at issue constitutes significant and probative evidence; therefore, the ALJ did not have to explain why he rejected it. The Commissioner specifically argues the evidence is neither significant nor probative because the reports came after the date last insured. *Howard ex. rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Vincent v. Heckler*, 739 F.2d 1393 (9th Cir. 1984).

In *Howard*, the court held that a medical review ignored by the ALJ did not establish probative or significant evidence because it relied on a neuropsychologist report the ALJ discredited earlier in his decision. *Howard*, 341 F.3d at 1012. Here, the ALJ did not previously discredit other evidence as in *Howard*; therefore, the court cannot excuse the ALJ's failure to provide clear and convincing reasons. The medical evidence listed above has the potential to prove the severity of Sullivan's symptoms during the crucial period, thus, constituting significant and probative evidence.

In *Vincent*, the court classified the opinion of a doctor as insignificant and non-probative because the doctor never saw the claimant after the allegedly disabling event. *Vincent*, 739 F.2d at 1395. Unlike the evidence in *Vincent*, the ignored evidence here could corroborate some of

4 - OPINION AND ORDER

Sullivan's testimony, be relevant in assessing the Listing Criteria, and show disability before December 31, 2006.

As demonstrated above, Sullivan's evidence is significant and probative unlike the evidence in *Howard* and *Vincent*. Therefore, the ALJ needed to provide clear and convincing reasons for rejecting the evidence. Medical evidence generated after the expiration of a claimant's insured status may be relevant in determining a claimant's pre-expiration condition; such evidence may not be disregarded solely because it was generated retrospectively. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Here, the ALJ's only stated reason for rejecting Sullivan's evidence was that: "because the opinions of acceptable medical sources are generally consistent throughout, they are afforded similar weight." Admin. R. 16. This sentence is ambiguous; it neither provides a clear and convincing reason for rejecting the evidence nor demonstrates use of the evidence. The ALJ failed to show substantial evidence supports his conclusion.

On remand, the ALJ will analyze the evidence described above and will incorporate this analysis when re-evaluating Sullivan's RFC and Step Three findings.

## III.    Step Three Listing of Impairments

The Commissioner acknowledges that certain conditions are so severe as to preclude substantial gainful activity. If the medical evidence establishes that a claimant suffers from such a condition, there is a presumption of disability without further inquiry. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1524(d)(1). Each presumptively disabling condition is known as a listing, and the Listing of Impairments enumerates the criteria for each listing. The claimant carries the burden of proving she meets one of the conditions listed or she

5 - OPINION AND ORDER

must offer a plausible theory of how all of her impairments equal one of the listed impairments. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

Sullivan contends the ALJ should have found her presumptively disabled under 1.02 *Major dysfunction of a joint(s) (due to any cause)* or 1.04 *Disorders of the spine* under the regulatory Listing of Impairments, and at minimum that she equaled one of the listed impairments. Sullivan presents a theory of how her impairments equal a listed impairment. She concedes, however, that this theory relies solely on evidence generated after the date last insured. Nonetheless, she claims the medical evidence proves she has a disability, and the ALJ failed to obtain a medical expert to determine the onset date. The ALJ's analysis of step three only states: "claimant's impairments or combination of impairments is not of sufficient severity to meet or medically equal one of the listed impairments." Admin. R. 14.

As noted in the previous section, medical evidence generated after the expiration of a claimant's insured status may provide support of a pre-expiration condition. *Smith v. Bowen*, 849 F.2d at 1225. Therefore, the ALJ must consider relevant medical opinions or provide specific and legitimate reasons for rejecting them. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). If the ALJ determines the medical evidence does not definitively establish an onset date, the ALJ must seek an opinion of a medical expert, particularly for slowly progressive diseases. Social Security Ruling (SSR) 83-20 1983 WL 31249; *see, e.g., DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).

The Commissioner argues that a claimant must establish disability in order to trigger the ALJ's responsibility to use an expert to infer an earlier onset date. *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). This general proposition does not apply

6 - OPINION AND ORDER

here because the ALJ failed to consider the very evidence that could have established disability. On remand, the ALJ must consider the evidence generated after the date last insured to determine whether it establishes disability. If disability is shown, the ALJ must obtain an expert's opinion regarding its onset.

## IV. Credibility Determination

### A. Sullivan claims she could not work because of her pain, limited ability to stand, and need to lie down after standing or sitting for more than an hour.

She claims her four back fusions, spinal discs collapsing, and sciatic-type pain in her legs and feet cause her significant back pain. Admin. R. 15. She depends on her partner to help her perform most of her daily activities such as showering, dressing, and grocery shopping. Sullivan also requires the use of two walking canes and can still only walk about thirty to forty feet before needing to rest. She further claims she has been mostly housebound since December 2005. She leaves home primarily to attend doctors' visits and occasionally to visit her sister. Admin. R. 15. She can still cook, but only in a seated position and still needs help reaching and doing tasks that require her to stand or bend down. Admin. R. 15. Lastly, she can only sit for an hour at a time before needing to lie down. Admin. R. 15.

### B. The ALJ accepted Sullivan's impairments, but discredited the testimony that suggests she is incapable of performing sedentary work.

Sullivan argues the ALJ erred in discrediting her testimony. If a claimant produces objective medical evidence of an underlying impairment that could reasonably produce the symptoms alleged, the ALJ must assess the credibility of the claimant regarding the severity of the symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008);

7 - OPINION AND ORDER

*Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). An adverse credibility determination must be based on clear and convincing reasons unless the record contains affirmative evidence suggesting the claimant is malingering. *Carmickle*, 533 F.3d at 1160. In determining credibility, an ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d at1039 (*quoting Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)).

The ALJ held Sullivan's impairments could reasonably produce some of the symptoms she alleged, but found she lacked credibility regarding the extent to which her symptoms limited her ability to function. Admin. R. 15. The ALJ accepted much of what Sullivan said and provided multiple reasons throughout his decision for rejecting certain testimony. For example, the ALJ accepted that Sullivan had back pain, sciatic pain in her legs, and accommodated her limitations in standing and walking by restricting her RFC to sedentary work. Admin. R. 16. However, the ALJ found Sullivan not fully credible in claiming that she cannot engage in work activity within the limitations of her RFC assessment. Admin. R. 18; 20 CFR § 404.1567. The following issues are the ones the ALJ noted in discrediting Sullivan's testimony.

First, the ALJ stated "there is very little medical evidence of record to establish the impairments alleged by claimant." Admin. R. 16. Although the absence of medical evidence cannot be the sole basis for discrediting subjective testimony, it is a proper factor in the credibility analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Because the ALJ provided other reasons for discrediting the testimony, his reliance on the absence of medical evidence along with these other factors is appropriate.

8 - OPINION AND ORDER

Second, the ALJ drew an adverse inference as to Sullivan's credibility because she stopped work due to reasons other than her disability. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Sullivan testified she stopped working due to furlough as opposed to a disability, which the ALJ pointed out in his decision. Admin. R. 15. The ALJ appropriately factored this into his credibility analysis.

Third, although the ALJ acknowledged Sullivan's remarkable one hundred pound weight loss, he also noted that despite morbid obesity exacerbating Sullivan's conditions and repeated admonishments to lose weight, she failed to lose the necessary amount of weight to improve her conditions. Admin. R. 16. When a claimant makes subjective statements about disabling symptoms, but fails to comply with prescribed treatment, an ALJ may reasonably find the subjective statements unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, because Sullivan both lost a significant amount of weight and remains morbidly obese, evidence of her compliance with treatment was ambiguous.

Finally, the ALJ referenced a note from a physician's assistant that states medication "allows her to remain independent in her home, work and participate in normal daily activities and basic [activities of daily life]." Admin. R. 16. The ALJ relied on Sullivan's daily activities and her discussions with the physician's assistant, represented in the note, to discredit her testimony. Sullivan testified that she reads, watches TV, cooks from a seated position, talks on the phone, and visits her sister and the doctor, but that her disability severely impedes these activities and that she either needs assistance or must take frequent breaks to lie down. Admin.

9 - OPINION AND ORDER

R. 146-157. The note by the physician's assistant reiterates Sullivan's statements regarding her abilities. Therefore, according to what she discussed with her physician's assistant, she is more independent than what her testimony suggested. Her prior inconsistent statement allows the ALJ to discredit her testimony. The Commissioner correctly contends that this note and Sullivan's activities contradict her testimony regarding her reliance on her partner and her inability to work and perform simple activities without help.

On remand, the ALJ must consider the medical evidence dated after the date last insured and address any implications this has on his previous adverse credibility finding.

## V. Lay Witness Testimony

Sullivan claims the ALJ committed reversible error by failing to address the statements of Martha Lassen, Sullivan's partner of over thirty years. Lassen's testimony presented the same impairments and limitations as Sullivan's testimony. An ALJ must take into account the statements of lay witnesses unless the ALJ expressly determines to disregard such evidence and gives reasons germane to each witness for doing so. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Here, the ALJ did not address the lay testimony except to say "the above [RFC] is supported by… the statements of the claimant and her witnesses that are consistent therewith." Admin. R. 16.

The Commissioner conceded that the ALJ erred in failing to incorporate this testimony. Admin. R. 138-145. However, the Commissioner correctly argues that it was a harmless error. A reviewing court may not reverse an ALJ's decision if the error identified is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (an error is harmless if, looking at the record as a whole, the error does not alter the outcome of the case); *Carmickle v. Comm'r, Soc. Sec. Admin.*,

10 - OPINION AND ORDER

533 F.3d 1155, 1162-63, n. 4 (an error is harmless if the ALJ's determination remains supported despite the error).

If an ALJ discredits certain testimony, he does not have to address similar testimony given by a different witness. In *Molina*, the ALJ did not address a lay witness' testimony, but provided sufficient reasons germane to another witness that gave similar testimony. If the ALJ provides reasons for discrediting certain testimony, he does not have to repeat himself when that testimony appears again, even if by a different person. *Molina*, 674 F.3d at 1111. The court held that his failure to explicitly reject the similar testimony was harmless. *Molina*, 674 F.3d at 1115. The testimony of Lessan and Sullivan are similar just as the two testimonies in *Molina*. Failing to discuss Lessan's testimony is harmless because the ALJ previously provided reasoning for discrediting Sullivan's testimony. Accordingly, I find no error in the ALJ's evaluation of lay witness, Martha Lassen. However, the ALJ must address any changes to this credibility determination after reviewing the medical evidence discussed above.

## VI. RFC Assessment

As mentioned in the previous section, the ALJ erred in making his RFC assessment without considering the medical evidence generated after December 31, 2006. On remand, the ALJ must consider this evidence and, if necessary, arrive at an RFC assessment that accurately reflects all of Sullivan's functional limitations.

## VII. Remedy

Sullivan contends that the court should reverse and remand for an award of benefits. The general rule is that the court should remand to the agency for additional investigation, explanation, and findings of fact. *Harman v. Apfel*, 211 F.3d 1172, 1174, 1178 (9th Cir. 2000).

11 - OPINION AND ORDER

An award of benefits may be appropriate when disability is clearly established and there are no outstanding issues to be resolved in proceedings after remand. *Benecke v. Barnhart*, 379 F.3d 587,593 (9th Cir. 2004); *Harman*, 211 F.3d at 1178. I am satisfied that further administrative proceedings are appropriate here. It is unclear whether the ignored evidence will establish disability or require the ALJ to reevaluate other aspects of his decision. Therefore, the appropriate remedy is to remand for further administrative proceedings.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED to evaluate all the medical evidence and such other action as necessary to assess accurately Sullivan's claim.

DATED this 8th day of October, 2014.

Robert E. Jones, Senior Judge
United States District Court

12 - OPINION AND ORDER